## THE ASIATIC PRINCE.

### (District Court, E. D. New York. July 9, 1900.)

1. SHIPPING—LIEN FOR FREIGHT.

Where the consignee and owner of a cargo fails to pay or tender the freight due on the discharge of the cargo, the carrier, to preserve its lien, is authorized to retain and store sufficient of the cargo to pay such freight, and the expense of storage and loss of use of the commodity must be borne by the owner.

2. SAME—LIABILITY OF CARRIER FOR INJURY TO CARGO—NEGLIGENCE IN HANDLING.

The breaking of a greatly unusual number of the bags in which a cargo of sugar was shipped in discharging raises a presumption of negligence on the part of the ship in handling, and, if unexplained, renders the carrier liable to the shipper for the loss and expense resulting.

3. ADMIRALTY—RECOVERY OF COSTS—UNNECESSARY LITIGATION.

Where litigation between a carrier and shipper over the payment of freight was wholly unnecessary, and was caused by the unreasonable conduct of both parties, a court of admiralty will require each party to pay its own costs.

In Admiralty. Suit to recover freight and to enforce a lien therefor.

Convers & Kirlin, for libelant.
Forster & Speir, for claimants.

THOMAS, District Judge. On May 26, 1899, the Asiatic Prince, laden with sugar, from Maceio, Brazil, arrived at the port of New York. She began discharging her cargo on May 29th, and finished such discharge on June 3d. Hitch, the claimant, had become the consignee. The sugar was in bags, and was subject to peculiar depreciation from the drainage of molasses, breaking of bags, and from evaporation. The decrease in weight from these causes frequently amounts to 16 or 18 per cent. on cargoes of this nature, and, as it ultimately appeared, the loss in the present case was about 12 or 13 per cent. One of the claimants testified that he expected cargoes of this nature to fall short 12 or 15 per cent. If the freight were computed upon the bills of lading, the libelant might have demanded justly the sum of $4,119.27, which would make no allowance for any depreciation arising from the causes stated. He in fact did demand this sum on or about June 2d, and again on June 3d, and still later, on June 6th, he demanded his freight upon the basis of a loss of 10 per cent. in weight of the sugar. At the time of the libelant's demand of the whole amount, the claimant refused to pay the same, and suggested the payment of about $3,000, but did not tender the same. Upon the

libelant refusing to accept less than the whole amount demanded, the claimant made a formal tender of £1. 17s. 6d., which tender was based upon the bills of lading, which provided that the freight on certain bags should be 13s. 9d., and the freight on other bags should be 10s. The intention of the contract of carriage was that these should be the rates per ton, but by an oversight the blank which should contain the word "ton" had not been filled. Therefore the claimant, standing upon the unjust proposition that he was called upon to pay only the sum of £1.17s.6d., tendered the same, and never thereafter increased the tender; while the libelant, equally disregardful of the certain knowledge that there had been a loss on the sugar, demanded payment at the outstart upon the assumption that such loss did not exist. The irritation caused by this action on either side has resulted in annoying and unnecessary litigation, and this court is asked to ascertain and state the equities between the parties, although the conduct of each party indicates an absence of effort in good faith to discharge the customary duties of merchants. After the arrival of the vessel a controversy arose respecting the obligation of one party or the other to mend the bags. It was not the duty of the carrier to mend the bags, which were out of order from some cause for which he was not liable; but the claimant insisted otherwise, at least to the extent that the carrier should bear one-half of the expense. The claimant finally placed his own menders on the ship, for whose services he presents a claim of $284.45. Pending all these controversies, the discharge of the sugar was begun at Woodruff's Stores, either into lighters provided by the claimant, or upon the dock, from which place it was also taken by the lighters; but the carrier refused to deliver 1,028 bags of sugar until the freight was paid, and, upon such freight not being paid, the 1,028 bags were stored. The libelant, according to the final weights of the sugar, was entitled to recover $3,602.81, provided no allowance was made for loss and injury due to his actionable negligence. No tender of that amount, nor of any amount save the pounds, shillings, and pence above stated, was made; and as the libelant had a lien for his freight he was authorized to store the sugar to maintain his lien. It was the claimant's duty to tender the due freight money, or whatever sum the libelant was entitled to receive, and, as he did not do this, the storage was technically authorized, and the expense thereof, and the loss of the use of the commodity, must fall upon the claimant. The claimant's demand that the libelant should pay for the mending cannot be sustained, save so far as such mending was caused by the carrier's negligence in discharging. An examination of the case shows that an unusual number of new bags were required, and the excess is so extraordinary that it leads inevitably to the conclusion of a lack of care on the part of the carrier in the handling of the cargo, in the absence of other adequate causes. The claimant was obliged to pay the sum of $284.45 for such mending, and it is concluded that at least one-half of such expenditure was occasioned by the libelant's culpable negligence. In addition to the items of which disposition is made by the foregoing holdings, the claimant demands payment for the loss of sugar wasted by the carrier's negligence in discharging. As the sugar did not show a shrinkage below the usual

average, or the expectation of the libelant in the present case, it must be concluded that no sugar was lost by the negligence of the carrier, although it may be that certain sweepings did not bring the full price. All the sugar delivered was sold at full price, save a certain amount, which the claimant places at about 800 pounds. It is impossible to determine what portion of these sweepings bringing a decreased price became such by reason of carelessness of the carrier in handling, as sufficient data is not furnished by the claimant for the court to make the determination. The loss arising from this cause is small, and, for the reason just stated, must be borne by the claimant. The claimant seeks to recover for the loss of sugar. The count showed the absence of 36 bags, but this does not indicate that 36 bags of sugar were lost, as the sugar was undoubtedly delivered in new bags, and the damage, if any, was caused by the deterioration in quality, and is included in the 800 pounds which were sold at half price. Under the circumstances it seems a just disposition of the case to require the claimants to pay the sum of $3,602.81, less $142.22, one-half of the total cost of mending the bags, which was made necessary by the carrier's negligence in handling. On the amount thus recovered by the libelant it should have interest from the date of the last delivery, which is understood to be June 6, 1899. The libelant tried to coerce the claimant to pay a sum that was not due nor reasonable, and the claimant, in irritation, failed in legal duty. The result has been an unnecessary and troublesome litigation, and the court emphasizes its disapproval by withholding costs from the libelant, and compelling each party to pay the costs incurred by it.